# FITZGERALD MONROE FLYNN

2341 Jefferson Street, Suite 200
San Diego, California 92110

February 16, 2024

**VIA ECF**
The Honorable Kenneth M. Karas, U.S. District Court, Southern District of New York

**Re:** *Pellegrino v. The Procter & Gamble Co.* **(No. 23-cv-10631) (KMK)**

Dear Judge Karas:

We write on behalf of Plaintiff, in response to The Procter & Gamble Company's ("P&G") letter requesting a premotion conference regarding a motion to transfer this matter to the Northern District of California, where P&G argues a "related case," styled *Amado v. The Proctor & Gamble Co.*, No. 23-cv-6308 ("*Amado II*") is pending; or, alternatively, stay this action. *See* Dkt. No. 163 ("Letter").[1] For the reasons discussed below, P&G's motion to transfer or stay is unlikely to succeed, and the Court should therefore decline to permit a more fulsome motion from P&G.

## I. Transfer to the Northern District of California is Not Warranted

P&G argues transfer is proper under 28 U.S.C. § 1404(a), because this case has "substantially identical factual allegations and theories of liability" as *Amado II*. Letter at 2 (arguing claims are "materially identical" in the two actions). Not so. And contrary to P&G, the factors relevant to transfer under § 1404(a) weigh *against* transfer to the Northern District of California.

When deciding whether to transfer a case under § 1404(a), "courts [ ] engage in a two-part inquiry. First, the Court should consider 'whether the action could have been brought in the proposed transferee forum; and second, whether the transfer would promote the convenience of parties and witnesses and would be in the interests of justice.'" *Monroe v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2019 WL 4688665, at *12 (S.D.N.Y. Sept. 25, 2019) (Karas, J.) (quotation omitted). "With regard to the second prong, courts weigh the following factors: '(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.'" *Id.* (quoting *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010)).

---

[1] Plaintiff recognizes that, pursuant to Section II(A) of the Court's Individual Rules of Practice, this letter is two days late. This was an oversight by the undersigned counsel, who missed the ECF hit last Friday evening and was traveling this past Wednesday and Thursday for a hearing on another matter in Sacramento. With apologies to the Court and P&G, Plaintiff respectfully requests that the Court nevertheless consider the argument herein.

Jack Fitzgerald | jfitzgerald@fmfpc.com | (619) 215-1741

P&G addresses only three factors. According to P&G, (i) "the interests of justice require that this Court not reward forum shopping," Letter at 2; (ii) transfer would prevent duplicative proceedings in two different districts," *id.*; and (iii) "transfer would serve the convenience of the parties and witnesses by reducing unnecessary inconveniences and expenses," *id.* at 3. P&G is wrong on each of these points and a proper analysis of *all* the factors shows they weigh heavily *against* transfer.

First, the interests of justice require this Court *retain* jurisdiction. The California court's preemption holding in *Amado v. The Procter & Gamble Co.*, 2023 WL 3898984 (N.D. Cal June 8, 2023) ("*Amado I*"), was premised entirely on the Ninth Circuit's decision in *Greenberg v. Target Corp.*, 985 F.3d 650 (9th Cir. 2021). *Greenberg* holds that structure function claims on a dietary supplement labeling are preempted where the claims are "'narrowly focused' in that they 'refer[ ] to *[an] ingredient's* general r[o]le in the human body, not *the product's* impact on a person's health,'" *Amado I*, 2023 WL 3898984, at *4 (quoting *Greenberg*, 985 F.3d at 654-55). Bound by *Greenberg*, and unpersuaded that it was distinguishable, the *Amado I* court found preempted Ms. Amado's challenges to structure function claims on Metamucil.

*Greenberg*, however, is erroneous, based on a misapplication of the regulatory history behind the FDA's regulation of dietary supplement labeling. But appealing *Amado I* to the Ninth Circuit would be fruitless in light of *Greenberg*: given the precedent, Ms. Amado would need the *United States Supreme Court* to overrule *Greenberg*. But the chance of the Court taking up review absent a circuit split is so slim as to be essentially non-existent. Ms. Pellegrino's only recourse for her challenges to structure function claims on Metamucil, therefore, is to file in a district that lacks binding authority analogous to *Greenberg*—such as a court in this Second Circuit. If such a court then rules similarly to *Greenberg* and *Amado I*, there is at least the potential to appeal the decision and create a circuit-split that would be more likely to get the Supreme Court's attention. Because "plaintiff filed its action in this district for legitimate purposes without regard to forum shopping, the Court [should] afford plaintiff's choice forum substantial deference." *See Sberbank of Russia v. Traisman*, 2014 WL 10999674, at *4 (D. Conn. Dec. 14, 2014) ("The fact that parallel litigation will be occurring in Russia and that defendant may be amenable to suit in Russia does not diminish the deference owed to plaintiff's choice of forum." (citing *Nat'l Union Fire Ins. Co. Of Pittsburgh, PA v. BP Amoco, P.LC.*, 2003 WL 21180421, at *6 (S.D.N.Y.2003))).

Second, in arguing that "transfer would prevent duplicative proceedings in two different districts," P&G overstates this case's overlap with *Amado II*. Ms. Amado brings California claims on behalf of a California class for the false and misleading marketing of Metamucil due to its harmful lead content. Here, Ms. Pellegrino brings New York claims on behalf of a New York class for the false and misleading marketing of Metamucil due to both its harmful lead *and* excessive added sugar content. Further, Ms. Amado challenges only a subset of the labeling claims Ms. Pellegrino challenges. Plainly, the adjudication of California claims, under California law, on behalf of California consumers, under a single theory of deception, is not "materially identical" to adjudicating New York claims, under New York law, on behalf of New York consumers, under dual theories of deception, for a different and larger number of labeling claims. Additionally, though P&G argues its "defenses to both [cases] are likely to be virtually the same," Letter at 2, Ms. Amado brings a claim for violation of California's Proposition 65, and P&G has indicated its intent, via letter, to assert a unique defense to that claim.[2]

---

[2] P&G asserts there is no lead "exposure" under Proposition 65, as defined in California Health & Safety Code, § 25102(i).

Page | 2



Third, to the extent P&G is concerned with "unnecessary inconveniences and expenses," Letter at 3, because it believes "discovery . . . implicate[s] the same materials and witnesses," *id.* at 2, Plaintiff's counsel are well situated to coordinate discovery across the two actions to avoid any such unnecessary inconveniences and expenses.

Because P&G offers no compelling reason to transfer this action to the Northern District of California, the Court should find further briefing on the issue unnecessary. *Cf. Monroe*, 2019 WL 4688665, at *13 ("In sum, none of Defendants' arguments regarding a § 1404(a) transfer is persuasive. Accordingly, the surviving claims will remain in this venue.").

Moreover, considering *all* relevant § 1404(a) factors shows transfer is unwarranted here. Although P&G does not even mention this as a factor, "[g]enerally, the plaintiff's choice of forum 'weighs heavily against transfer.'" *Id.* (citations omitted). Because Ms. Pellegrino resides in New York and P&G in Ohio, the second, third, fourth, and sixth § 1404(a) factors—the convenience of witnesses, the location of relevant documents and access to sources of proof, the convenience of parties, and the availability of process to compel the attendance of unwilling witnesses—all weigh *against* transfer. For example, the relevant witnesses and documents will be in New York and Ohio, not California, making New York more convenient for both parties. The fifth factor—the locus of operative facts—is in New York because that is where the alleged harm took place when P&G sold Metamucil to Ms. Pellegrino and other New York consumers. *See, e.g.*, *DeCoursey v. Murad, LLC*, --- F. Supp. 3d ----, 2023 WL 3478459, at *8 n.13 (N.D.N.Y. May 16, 2023) (under the GBL, injury occurs where the product is purchased). Finally, "[P]laintiff is an individual whereas [P&G] is a multi-billion dollar corporation; thus, the 'relative means' factor does not cut in favor of [P&G]." *See Karam v. New Power Auth.*, 2017 WL 1424568, at *2 (S.D.N.Y. Apr. 20, 2017).

## II.   Neither Should the Case Be Stayed

"The Court has an obligation 'to secure the just, speedy, and inexpensive determination of every action and proceeding,'" *Ahmedou v. U.S. Dep't of Homeland Sec.*, 2023 WL 2771670, at *1 (E.D.N.Y. Apr. 4, 2023) (quoting Fed. R. Civ. P. 1), and "a request to stay litigation appears to be the antithesis of that very command," *id.* (alteration removed) (quoting *Friedman as Tr. of Ellet Bros., LLC v. Nexien, Inc.*, 2021 WL 5910763, at *2 (E.D.N.Y. Nov. 9, 2021)). Here, P&G mentions in a footnote that courts consider "the private interests of and burden on the defendants" as a factor in a stay analysis, Letter at 3 n.3, but it provides only vague generalizations about its supposed burden. *See id.* at 3. Under such circumstances, P&G cannot, as it must to stay the case, "establish 'a clear case of hardship or inequity in being required to go forward,'" *see United States v. Town of Oyster Bay*, 66 F. Supp. 3d 285, 289 (E.D.N.Y. 2014) (quotation omitted).

The Court should also reject P&G's self-serving statement that "a stay will not prejudice plaintiff," Letter at 3, because it would "put a temporary halt to fees [Plaintiff is] incur[ing] in connection with this litigation," *id.* (alteration omitted; quoting *Bahl v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*, 2018 WL 4861390, *2 (E.D.N.Y. Sept. 28, 2018)). Because Plaintiff's counsel are prosecuting this case on a contingency basis, Plaintiff will not pay any fees unless her counsel successfully prosecute her claims. Thus, if P&G is successful on its motion to dismiss, Plaintiff will pay no fees; but if the case proceeds, no efforts will have been wasted.



Respectfully Submitted,

*[signature]*

Jack Fitzgerald

cc: Courtlin H. Lannin (via ECF)

The Court will hold a pre-motion conference on 2/27/24, at 11:00 via teleconference

So Ordered

*[signature]*

2/19/24