UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REGINA PELLEGRINO, on behalf of herself, all others similarly situated, and the general public,<br><br>     Plaintiff,<br><br>  v.<br><br>THE PROCTER & GAMBLE CO.,<br><br>     Defendant. | Civil Action No. 23-cv-10631-KMK |

**REPLY IN SUPPORT OF P&G'S MOTION TO TRANSFER OR STAY THIS ACTION**

                 COVINGTON & BURLING LLP
                 Cortlin H. Lannin
                 Salesforce Tower
                 450 Mission Street, Suite 5400
                 San Francisco, CA 94105
                 415-591-7078
                 clannin@cov.com

                 *Attorney for Defendant The Procter & Gamble Co.*

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.   ARGUMENT ...................................................................................................................... 2

      A.   This Court Should Transfer This Action to the Northern District of California. ................................................................................................................ 2

            1.   Ms. Pellegrino Is Estopped From Denying Personal Jurisdiction and Venue in the Northern District of California, and in Any Event P&G Consents to Jurisdiction There. ........................................................... 2

            2.   The Relevant Factors Weigh in Favor of Transfer. ..................................... 6

      B.   This Court Should Briefly Stay This Case if it Declines To Transfer It ............... 10

III.   CONCLUSION ................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Am. Boat Co., LLC*,
 2012 WL 32352 (S.D.N.Y. 2012).................................................................................................3

*Armstrong v. Costco Wholesale Corp. & Nice-Pak Prods., Inc.*,
 234 F. Supp. 3d 367 (E.D.N.Y. 2017).........................................................................................9

*Bayer Schera Pharma AG v. Sandoz, Inc.*,
 2009 WL 440381 (S.D.N.Y. Feb. 18, 2009).................................................................................6

*Bechuck v. Home Depot U.S.A., Inc.*,
 814 F.3d 287 (5th Cir. 2016) .......................................................................................................7

*Bent v. Zounds Hearing Franchising, LLC*,
 2016 WL 153092 (S.D.N.Y. Jan. 12, 2016) ................................................................................5

*BPP Ill., LLC v. Royal Bank of Scotland Grp. PLC*,
 859 F.3d 188 (2d Cir. 2017)........................................................................................................3

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985).................................................................................................................4, 6

*Cheeseman v. Carey*,
 485 F. Supp. 203 (S.D.N.Y. 1980)...........................................................................................7, 8

*City of New York v. Mickalis Pawn Shop, LLC*,
 645 F.3d 114 (2d Cir. 2011)........................................................................................................4

*Environ Prods., Inc. v. Total Containment, Inc.*,
 1995 WL 459003 (E.D. Pa. July 31, 1995).................................................................................7

*ErGo Media Cap., LLC v. Bluemner*,
 2015 WL 6442252 (S.D.N.Y. Oct. 23, 2015)..............................................................................5

*Evonik Corp. v. Amani*,
 2018 WL 3159823 (S.D.N.Y. Jan. 10, 2018) .............................................................................5

*Forsher v. J.M. Smucker Co.*,
 2019 WL 235639 (E.D.N.Y. Jan. 16, 2019) ................................................................................9

*Hoffman v. Blaski*,
 363 U.S. 335 (1960).....................................................................................................................6

*Innovate1 v. First Bridge Merch. Sols., LLC*,
 2020 WL 4718970 (D. Conn. Aug. 13, 2020).............................................................................5

*Maldonado v. Town of Greenburgh*,
  460 F. Supp. 3d 382 (S.D.N.Y. 2020)..........................................................................2

*Mallory v. Norfolk S. Railway Co.*,
  600 U.S. 122 (2023).................................................................................................4, 6

*Marotto v. Kellogg Co.*,
  2018 WL 10667923 (S.D.N.Y. Nov. 29, 2018)........................................................4, 9

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Younger Bros.*,
  2001 WL 669042 (S.D.N.Y. June 13, 2001) ................................................................5

*Nuss v. Guardian Life Ins. Co. of Am.*,
  2021 WL 1791593 (S.D.N.Y. May 5, 2021) ................................................................5

*Palmore v. Napoli Shkolnik PLLC*,
  2024 WL 1330003 (S.D.N.Y. Mar. 28, 2024) .............................................................5

*Warfel v. Chase Bank USA, N.A.*,
  2012 WL 441135 (S.D. Ohio Feb. 10, 2012)................................................................7

**Statutes**

28 U.S.C. § 1391(b)................................................................................................................2

28 U.S.C. § 1404..........................................................................................................2, 6, 7

**Other Authorities**

Fed. R. Civ. P. 41.........................................................................................................1, 6, 7

I. **INTRODUCTION**

In her opposition to P&G's Motion to Transfer or Stay this action, Plaintiff Regina Pellegrino now acknowledges that she is attempting to resuscitate in this forum claims that she chose to assert in the Northern District of California in the first instance, but that Judge Chesney dismissed. She characterizes this as "tactical decision-making," Opp. at 14, but it is plainly forum shopping. The opposition contains a lengthy defense of her purported right under Rule 41 to voluntarily dismiss her case in California and re-file here, but that discussion is a red herring. While Ms. Pellegrino's "tactical decision-making" may be permissible as a technical matter—and P&G has never argued to the contrary—that does not mean this Court has to reward it. Nor does it foreclose the Court from transferring the action where, as here, it would be in the interests of justice to do so.

In addition, even though Ms. Pellegrino previously sought out the Northern District of California to hear her sugar-related claims, she now asserts transfer would be improper because that court allegedly *lacks* personal jurisdiction over P&G to entertain those very same claims. But Ms. Pellegrino is estopped from advancing a position so clearly contradictory of her earlier one, and even were she not, P&G has both impliedly and expressly consented to jurisdiction and venue in that forum.

Because jurisdiction and venue would be proper, and the transfer factors either favor transfer or are neutral at best, this Court should transfer this action to the Northern District of California. If it declines to do so, however, P&G respectfully requests that it stay this case until Judge Chesney adjudicates P&G's motion to dismiss the companion case in California, which would mitigate the risk of inconsistent rulings and give this Court the benefit of Judge Chesney's reasoning when it makes its own determination as to the viability of Ms. Pellegrino's claims.

## II.  ARGUMENT

### A.  This Court Should Transfer This Action to the Northern District of California.

P&G's motion established that both steps of the Section 1404(a) transfer analysis are satisfied here, as this case "might have been brought in the transferee court," and "the convenience of transfer and the interests of justice" favor transfer. Mot. at 9–17. Ms. Pellegrino contests both prongs of the test, but her arguments are unavailing.

#### 1.  Ms. Pellegrino Is Estopped From Denying Personal Jurisdiction and Venue in the Northern District of California, and in Any Event P&G Consents to Jurisdiction There.

As P&G observed in its motion, Ms. Pellegrino's previous complaint against P&G asserted that the Northern District of California had personal jurisdiction over her claims against P&G and that venue would be proper there. Mot. at 9. Now, in an abrupt and unexpected about-face, Ms. Pellegrino argues that the Northern District of California in fact *lacks* personal jurisdiction over P&G because it is not subject to general jurisdiction in that forum and that court would lack specific jurisdiction over her claims. She also argues that venue is not proper there according to the factors described in 28 U.S.C. § 1391(b). Even assuming Ms. Pellegrino is correct on these points, however, her argument still fails for at least two reasons.[1]

*First*, the doctrine of judicial estoppel "prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that is successfully advanced in another

---

[1] Ms. Pellegrino claims that P&G's argument as to personal jurisdiction was "cursory" and that any additional argument should be waived. Opp. at 6 n.4. But P&G did not extensively argue the various potential sources of personal jurisdiction in its motion because (i) as P&G observed in its pre-motion letter, Ms. Pellegrino previously sought out the jurisdiction of the Northern District of California, and "at a minimum, P&G consents" to personal jurisdiction there, *see* Dkt. No. 13 at 2 n.1; and (ii) Ms. Pellegrino gave no indication in her response to P&G's letter that she would contest that court's jurisdiction now. *See* Dkt. No. 14; *Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 391 n.5 (S.D.N.Y. 2020) (Karas, J.) (suggesting arguments to be briefed "should (continued…)

-2-

proceeding." *BPP Ill., LLC v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 192 (2d Cir. 2017). Having previously sought out the jurisdiction of the California court, Ms. Pellegrino is thus estopped from arguing that jurisdiction and venue there would be improper. Judicial estoppel generally applies where "a party's later position is 'clearly inconsistent' with its earlier position; the party's former position has been adopted in some way by the court in the earlier proceeding; and the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *Id.* (cleaned up). All three factors are satisfied here.

To start, Ms. Pellegrino's newfound position that the Northern District of California may not exercise personal jurisdiction over her claims, and that venue is improper there, is "clearly inconsistent" with her previous invocation of that court's jurisdiction over some of the *exact same claims* she is now reasserting here. As discussed further below, Ms. Pellegrino places much weight on the fact that she joined an amended complaint in that case and that P&G, in consenting to the amendment, impliedly consented to the court exercising jurisdiction over her claims. None of that, however, changes the fact that she sought out the jurisdiction of the Northern District of California in the first place. In addition, Ms. Pellegrino's prior position was accepted by Judge Chesney, who permitted the filing of Ms. Pellegrino's amended complaint asserting claims against P&G (*see Amado v. The Procter & Gamble Co.*, No. 22-cv-5427, Dkt. No. 23 (N.D. Cal. Feb. 3, 2023)) and proceeded to adjudicate P&G's motion to dismiss her complaint. Finally, Ms. Pellegrino would

---

have been raised in the Pre-Motion Letter"). That said, to the extent Ms. Pellegrino wishes to address the estoppel and consent arguments presented below, P&G has no objection to her submitting a sur-reply on those issues. *See Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Am. Boat Co., LLC*, 2012 WL 32352 (S.D.N.Y. 2012) ("[C]ourts have broad discretion to consider arguments in a sur-reply.") (citation omitted).

derive an "unfair advantage" were she successful in evading Judge Chesney's decision by now claiming personal jurisdiction and venue is improper where she evidently did not think so before.

*Second*, as noted above, Ms. Pellegrino correctly observes that P&G consented to personal jurisdiction when Ms. Pellegrino filed her complaint in the Northern District of California. However, what she fails to mention—and as P&G stated in its pre-motion letter—is that in making this motion to transfer, P&G has consented to such jurisdiction again. *See* P&G's Pre-Motion Letter, Dkt. No. 13 at 2 n.1 (stating that "personal jurisdiction would be proper [in the Northern District of California] because, at a minimum, P&G consents to it."). That consent provides a separate and independent ground apart from estoppel for this Court to conclude that the California court could exercise personal jurisdiction over Ms. Pellegrino's claims against P&G.

The Supreme Court has held that "because the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985). The Court recently reiterated, furthermore, that "express or implied consent can continue to ground personal jurisdiction—and consent may be manifested in various ways by word or deed." *Mallory v. Norfolk S. Railway Co.*, 600 U.S. 122, 138 (2023) (cleaned up). The Second Circuit has similarly observed that "[a] court will obtain, through implied consent, personal jurisdiction over a defendant if the actions of the defendant during the litigation amount to a legal submission to the jurisdiction of the court, whether voluntary or not." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011).

In accord with those principles, courts in this circuit (including a decision cited by Ms. Pellegrino) have concluded that a defendant seeking transfer can consent to the jurisdiction of the transferee court, whether impliedly or otherwise. *Marotto v. Kellogg Co.*, 2018 WL 10667923, at

\*5 (S.D.N.Y. Nov. 29, 2018) (finding that Defendants were subject to personal jurisdiction in California by implied consent because Defendants moved to transfer the venue from New York to California) (citing *Burger King*, 471 U.S. at 472 n.14); *Evonik Corp. v. Amani*, 2018 WL 3159823, at \*1 (S.D.N.Y. Jan. 10, 2018) (concluding case could have been brought in transferee district where "defendants have consented to the transfer under § 1404(a), and agreed to waive any objection to personal jurisdiction and venue, as they are permitted to do.").[2] Indeed, as P&G stated in its pre-motion letter, it *expressly* consents to such jurisdiction in this case. *See* Dkt. No. 13 at 2 n.1; *Bent v. Zounds Hearing Franchising, LLC*, 2016 WL 153092, at \*5 (S.D.N.Y. Jan. 12, 2016) (concluding that transferee district has "personal jurisdiction over [defendant] by virtue of [defendant's] express consent").

Furthermore, "[a] party that consents to personal jurisdiction in a particular forum also consents to venue there." *ErGo Media Cap., LLC v. Bluemner*, 2015 WL 6442252, at \*2 (S.D.N.Y. Oct. 23, 2015) (citing *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir.1996)); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Younger Bros.*, 2001 WL 669042, at \*3 n.4 (S.D.N.Y. June 13, 2001) ("Consent to venue follows from consent to personal jurisdiction."). As follows, in moving to transfer P&G has consented both to personal jurisdiction *and* venue in the Northern District of California. *See Palmore*, 2024 WL 1330003, at \*11 ("By requesting the transfer, Defendants also waive objections to venue in the [transferee district]."); *Evonik*, 2018 WL 3159823, at \*1. In short, P&G's consent to the Northern District of California's jurisdiction and

---

[2] *See also Nuss v. Guardian Life Ins. Co. of Am.*, 2021 WL 1791593, at \*2 (S.D.N.Y. May 5, 2021) (reflecting same principle); *Palmore v. Napoli Shkolnik PLLC*, 2024 WL 1330003, at \*11 (S.D.N.Y. Mar. 28, 2024) (reflecting same principle in context of motion to transfer venue under Section 1406); *Innovate1 v. First Bridge Merch. Sols., LLC*, 2020 WL 4718970, at \*6 n.8 (D. Conn. Aug. 13, 2020) (reflecting same principle in context of motion to transfer venue under Section 1406).

venue provides a basis for this Court to transfer Ms. Pellegrino's action there, without regard to whether that court would have had general or specific jurisdiction over P&G in the first instance.[3]

### 2. The Relevant Factors Weigh in Favor of Transfer.

In its motion, P&G demonstrated that the factors courts use to assess whether transfer is in the interest of justice and would serve the convenience of parties and witnesses either favor transfer or were neutral. *See* Mot. at 9-17. Plaintiff's responses are inapposite, unpersuasive, or both.

#### a) Ms. Pellegrino's Forum Shopping Weighs in Favor of Transfer.

The opposition confirms that there is no dispute that Ms. Pellegrino is attempting to reassert in this case certain claims that Judge Chesney previously dismissed. Forum shopping of this type does not serve the "interests of justice." *See* Mot. at 10 (collecting cases).

In response, Ms. Pellegrino has abandoned any pretense that her re-filing in this forum was in service of generating a circuit split. *See id.* at 12 (discussing Ms. Pellegrino's pre-motion letter). Instead, under the artful label of "tactical decision-making," *see* Opp. at 14, she all but acknowledges she is attempting to avoid Judge Chesney's decision dismissing her claims. She then provides extensive argument, citing almost entirely out-of-circuit authority, as to why she "was entitled under the Federal Rules," including Rule 41, "to make her procedural choices." *Id.* at 11. All of this argument is largely beside the point, however, because P&G has *never argued* that Ms. Pellegrino violated Rule 41 in dismissing her previous claims and reasserting them here. What Ms. Pellegrino fails to appreciate is that even assuming her "tactical decision-making" is

---

[3] P&G recognizes that other courts have concluded that Section 1404 does not permit transfer of an action to a forum that acquires jurisdiction over the defendant after the filing of the lawsuit, including by defendant's consent. *See, e.g.*, *Bayer Schera Pharma AG v. Sandoz, Inc.*, 2009 WL 440381, at *4 (S.D.N.Y. Feb. 18, 2009) (discussing *Hoffman v. Blaski*, 363 U.S. 335 (1960)). Those cases generally rely on the Supreme Court's *Blaski* decision, which long predates *Burger King* and *Mallory*. As such, there is good reason to doubt the vitality of these decisions.

permissible pursuant to Rule 41, that does not mean it is consistent with the "interests of justice" within the meaning of Section 1404. *Environ Prods., Inc. v. Total Containment, Inc.*, 1995 WL 459003, at *4 (E.D. Pa. July 31, 1995) ("[T]he analysis performed, or conclusions reached, under the transfer of venue statute have no bearing upon the resolution of the [Rule 41] motion.").

Ms. Pellegrino also argues that transferring her case "would abridge the right she enjoys under Rule 41" to voluntarily dismiss her case in the Northern District of California and then re-file it here. *See id.* at 11; *see also id.* at 15 (arguing that transferring case would "effectively impose conditions or burdens" on her rights under Rule 41). Ms. Pellegrino is again improperly conflating Rule 41 with the Section 1404 transfer analysis. *See Warfel v. Chase Bank USA, N.A.*, 2012 WL 441135, at *3 (S.D. Ohio Feb. 10, 2012) ("Courts have held that a Section 1404 analysis is entirely distinct from a Rule 41(a)(2) analysis."). In so doing, she essentially proposes a rule that would preclude a court from transferring a newly-filed action back to the forum in which the plaintiff originally filed but voluntarily dismissed her complaint. Section 1404 contains no such restriction, and the authority cited by Ms. Pellegrino—which concerns Rule 41 and whether courts may attach re-filing conditions to dismissals under that rule—does not support the adoption of one. *See, e.g., Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 299 (5th Cir. 2016) (discussing whether courts may attach a re-filing condition to a Rule 41(a)(2) dismissal).

Ms. Pellegrino also fails to persuasively distinguish the cases P&G cited in which a court transferred an action based at least in part on forum shopping concerns. *See* Mot. at 10. She does not dispute that forum shopping was at issue in each case, but rather notes that each court considered other transfer factors as well. That is true enough, and P&G has urged the same approach here. Finally, Ms. Pellegrino's claim (Opp. at 17) that *Cheeseman v. Carey* "actually makes [her] point" is puzzling. In that case, as Ms. Pellegrino notes, the court observed that some

types of "forum shopping," such as picking a forum based on the congestion of the docket and the location of witnesses, "is no more an evil than any other tactical determination a party makes in its behalf." 485 F. Supp. 203, 215 (S.D.N.Y. 1980). But in a passage Ms. Pellegrino does not cite, the court went on to note that "[h]ad plaintiffs selected this forum to avoid specific precedents in the [proposed transferee district], the case for a transfer would have been far stronger." *Id.* Ms. Pellegrino having done exactly that, the case for a transfer here is indeed "far stronger."

### b) The Remaining Favors Favor Transfer or Are Neutral.

Ms. Pellegrino's arguments regarding the remaining transfer factors fare no better.[4]

*First*, Ms. Pellegrino quibbles with P&G's use of "centralize" in a single sentence, arguing that "centralization" is different from transfer and left to the Judicial Panel on Multidistrict Litigation. Opp. at 18-19. A word used exactly once in the motion is a thin reed on which to hang this argument, but for avoidance of doubt: P&G is not proposing a MDL for these cases. And Ms. Pellegrino's breezy assurance that "coordination of discovery and other matters" between the two cases "should be relatively simple" even absent transfer ignores that, in that scenario, the two cases would be before two different judges who may set different schedules and approach discovery and other disputes differently. *See id.* at 19.

*Second*, notwithstanding Ms. Pellegrino's complaint about the specificity of the declaration P&G submitted in support of its motion, she does not seriously dispute—nor could she—that relevant company witnesses are likely to be located in or around Cincinnati. Opp. at 20. She claims that "the Northern District of California is no more convenient for these unnamed witnesses than is the Southern District of New York," but this misses the point: as P&G pointed out in its

---

[4] Ms. Pellegrino agrees that several of the factors are neutral—including the location of documents, the availability of process, the relative means of the parties, and the court's familiarity with governing law—and so P&G will not address them in depth here.

motion, to the extent any of these witnesses need to travel at all, "it will be more convenient for them to travel to a single forum in San Francisco as opposed to two courts on opposite coasts." Mot. at 15. If anything, then, this factor thus favors transfer.

*Third*, Ms. Pellegrino's argument that New York constitutes the "locus of operative facts" in this case strains common sense. Opp. at 21-22. As P&G acknowledged, Ms. Pellegrino alleges that she bought Metamucil in New York. But the crux of this false advertising case lies in the development, labeling, and marketing of Metamucil, which occurred in Ohio. That makes Ohio a locus of operative facts, as one of Ms. Pellegrino's own cases acknowledges. *See Forsher v. J.M. Smucker Co.*, 2019 WL 235639, at *6 (E.D.N.Y. Jan. 16, 2019) (concluding in false advertising case that the Northern District of Ohio was the "*main*" locus of operative facts "because that is where employees 'made strategic decisions about the sale, marketing and labeling' of Defendant's 'natural' peanut butter—decisions that now form the basis of Plaintiff's claims") (emphasis in original). Her other cases are distinguishable.[5] This factor is accordingly neutral.

*Finally*, Ms. Pellegrino argues that her choice of forum is afforded "considerable weight" and cites authority for that unremarkable proposition. Opp. at 24. As P&G acknowledged, that is ordinarily the case—but not here, where she has filed in this forum for the transparent purpose of reviving claims Judge Chesney previously dismissed. Mot. at 15 (collecting cases). Ms.

---

[5] *See Armstrong v. Costco Wholesale Corp. & Nice-Pak Prods., Inc.*, 234 F. Supp. 3d 367, 370-71 (E.D.N.Y. 2017) (finding Oregon was "center of gravity" in "flushable wipe" litigation in part because most evidence "can be easily transported to any venue, with the crucial exception of plaintiff's home plumbing system, which is located in Oregon"); *Marotto*, 2018 WL 10667923, at *6 (merely observing, without agreeing, that "Plaintiffs argue that because the Pringles were purchased in New York, the operative facts occurred within the forum.").

-9-

Pellegrino does not even mention forum shopping in this context, much less address P&G's authority on this point.

### B. This Court Should Briefly Stay This Case if it Declines To Transfer It.

If this Court declines to transfer Ms. Pellegrino's case to the Northern District of California, P&G has requested that the Court briefly stay this action until Judge Chesney decides P&G's motion to dismiss Ms. Amado's complaint. At that point, this case would resume with the parties briefing a motion to dismiss Ms. Pellegrino's complaint. Mot. at 18. In response, Ms. Pellegrino alleges that P&G is engaged in "judge shopping" because, she claims, "P&G clearly believes it is advantageous" for Judge Chesney to address lead-based challenges to Metamucil "before this Court is allowed to decide that question." Opp. at 17-18, 24. This reckless argument cannot be squared with Ms. Pellegrino's assertion that Ms. Amado's companion case against P&G was randomly assigned to Judge Chesney. *See* Opp. at 4 n.3. It ignores that Ms. Pellegrino sought out the Northern District of California in the first instance, and by virtue of that choice Judge Chesney has now developed a familiarity with the Metamucil products and their labels. It also ignores that a brief stay would help mitigate the risk of inconsistent decisions. While this Court is of course under no obligation to follow Judge Chesney's decisions on either the sugar or lead-related claims presented in this case, it is difficult to understand Ms. Pellegrino's objection to ensuring this Court has the benefit of her reasoning on both when it takes up P&G's motion in this case.

### III. CONCLUSION

For the foregoing reasons, P&G respectfully requests that the Court transfer this action to the Northern District of California or, in the alternative, stay this action until Judge Chesney rules on P&G's motion to dismiss Ms. Amado's companion complaint in that forum.

Dated: May 13, 2024 COVINGTON & BURLING LLP

*s/ Cortlin H. Lannin*
Cortlin H. Lannin

COVINGTON & BURLING LLP
Cortlin H. Lannin
Salesforce Tower
450 Mission Street, Suite 5400
San Francisco, CA 94105
415-591-7078
clannin@cov.com

*Attorneys for Defendant The Procter & Gamble Co.*