UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

REGINA PELLEGRINO,

                         Plaintiff,

                  v.

THE PROCTER & GAMBLE CO.,

                         Defendant.

No. 23-CV-10631 (KMK)

OPINION & ORDER

---

Appearances:

Melanie Rae Monroe, Esq.
John Joseph Fitzgerald, IV, Esq.
Fitzgerald Monroe Flynn PC
San Diego, CA
*Counsel for Plaintiff*

Cortlin H. Lannin, Esq.
Covington & Burling LLP
San Francisco, CA
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

      Plaintiff Regina Pellegrino ("Plaintiff" or "Pellegrino") brings this Class Action against Defendant Procter & Gamble ("Defendant" or "P&G"), asserting claims for unfair and deceptive business practices and false advertising under New York General Business Laws §§ 349 and 350. (Dkt. No. 1 ¶¶ 192–205 (the "Pellegrino Complaint" or "Compl.").) Now before the Court is Defendant's Motion to Transfer the case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) or, alternatively, stay the Action ("the Motion" or "Mot.") (Dkt No. 20)). For the following reasons, Defendant's Motion is denied.

## I. Background

### A. Factual Background

Unless specified otherwise, the following facts are drawn from Plaintiff's Complaint, as well as uncontested materials the Parties submitted in connection with this Motion, and are taken as true in resolving the instant Motion.

#### 1. The Parties

Defendant is a consumer goods company incorporated in Ohio and headquartered in Cincinnati, Ohio. (Pellegrino Compl. ¶ 8.) Among other products, Defendant develops and markets Metamucil, a psyllium fiber supplement. (*Id.* ¶ 10; Decl. of K. Blackburn in Supp. of Mot. ¶ 4 ("Blackburn Decl.") (Dkt. No. 23).) The employees of Defendant who "have relevant responsibilities for Metamucil, including for the development, labeling design, and marketing of the product, are located in suburban Cincinnati." (Blackburn Decl. ¶ 5.)

Plaintiff is a New York resident who purchased Metamucil products starting in 2020, typically from a CVS in Thornwood, New York. (Pellegrino Compl. ¶¶ 7, 167.)

#### 2. The California Action

In September 2022, California consumer Tara Amado filed a class action in the Northern District of California against Defendant for misleadingly marketing a single variety of Metamucil, Made With Real Sugar ("MWRS"). *Amado v. Procter & Gamble Co.*, No. 22-CV-5427 (N.D. Cal.) ("*Amado I*"). Amado asserted causes of action under various California business laws, alleging that the Metamucil product was misleadingly marketed as healthy when, in fact, "compelling scientific evidence demonstrates that the Metamucil Powders—due to their added sugar content—actually decrease appetite control, harm blood sugar levels, and damage

digestive health." *Amado v. Procter & Gamble Co.*, No. 22-CV-5427, 2023 WL 3898984, at *1–2 (N.D. Cal. June 8, 2023).

In November 2022, after Defendant moved to dismiss, Amado amended the complaint. (Pl's Mem. in Opp. to Mot. 12 ("Pl's Opp'n") (Dkt. No. 24).) Thereafter, the parties stipulated to adding Pellegrino, a New York consumer, as a named plaintiff asserting causes of action under New York General Business Law §§ 349 and 350. (*Id.*) *See also Amado*, 2023 WL 3898984, at *1.[1] Plaintiffs Amado and Pellegrino filed a second amended complaint, which Defendant moved to dismiss. Judge Maxine Chesney of the Northern District of California granted Defendant's motion, concluding, among other grounds, that plaintiffs' false misrepresentation claims were preempted by federal law under Ninth Circuit precedent. *Amado*, 2023 WL 3898984 at *5–7 (citing inter alia *Greenberg v. Target Corp.*, 985 F.3d 650 (9th Cir. 2021)).

On June 19, 2023, Plaintiffs voluntarily dismissed their claims without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (*Amado I*, Dkt. No. 39.)

### 3. The New York and California Actions

On December 6, 2023, Pellegrino and Amado filed separate lawsuits against Defendant; Pellegrino filed the instant Action in this Court, (*see* Pellegrino Compl.), while Amado again filed in the Northern District of California, (*Amado v. Procter & Gamble Co.*, No. 23-CV-6308 (N.D. Cal.) ("*Amado II*")).

The Pellegrino Complaint asserts nearly identical sugar-related misrepresentation claims as asserted in *Amado I*. (*Compare* Pellegrino Compl. ¶¶ 2, 76, 93, 110, 124, *with* Lannin Decl.

---

[1] Amado and Pellegrino also asserted causes of action for unjust enrichment, negligent misrepresentation, and intentional misrepresentation. *Amado*, 2023 WL 3898984, at *2.

Ex. B ¶¶ 2, 27, 42, 51, 96 (the "*Amado I* Complaint") (Dkt. No. 22-2).) The Pellegrino Complaint also contains new allegations that Defendant made false representations regarding the levels of lead in various Metamucil products. (Pellegrino Compl. ¶¶ 16, 24, 41–56.) In her new California complaint, Amado asserts only lead-related misrepresentation claims under California state law. (Lannin Decl. Ex. C ¶¶ 68–75 (the "*Amado II* Complaint") (Dkt. No. 22-3).)[2] Apart from differences regarding the plaintiffs and the state law providing the cause of actions, the lead-related claims asserted in Pellegrino Complaint and the *Amado II* Complaint are nearly identical. (*Compare* Pellegrino Compl. ¶¶ 41–69, *with Amado II* Complaint ¶¶ 42–69; *see also* Lannin Decl. Ex. D (Dkt. No. 22-4) (redline reflecting changes from *Amado II* Complaint to Pellegrino Complaint).)

### B. Procedural Background

On February 9, 2024, Defendant filed a pre-motion letter informing the Court of its intent to move to transfer this Action to the Northern District of California. (Def's Pre-Mot. Ltr. 2 (Dkt. No. 13).) After Plaintiff responded and the Court held a pre-motion conference, (Pl's Pre-Mot. Ltr. (Dkt. No. 14); *see* Dkt. (Minute Entry for February 27, 2024)), the Court set a briefing schedule for the instant motion, (Dkt. No. 19).

On March 3, 2024, Defendant moved to stay the *Amado II* action until this Court ruled on the instant Motion. (*See Amado II*, Dkt. No. 23.) The *Amado II* court granted the stay on April 3, 2024. (*Amado II*, Dkt. No. 32.) As of the date of this Order, that case is still stayed.

Defendant filed its Motion on March 29, 2024. (*See* Mot.; Def's Mem. in Supp. of Mot. ("Def's Mem.") (Dkt. No. 21); Decl. of C. Lannin, Esq. in Supp. of Mot. ("Lannin Decl.") (Dkt. No. 22); Blackburn Decl.) Plaintiff filed her Opposition on April 29, 2024. (*See* Pl's Opp'n;

---

[2] *Amado II* was assigned to Judge Chesney. (*See generally Amado II* Dkt.)

Decl. of J. Fitzgerald, Esq. in Opp'n to Mot. ("Fitzgerald Decl.") (Dkt. No. 25).) Defendant filed a reply on May 13, 2024. (*See* Def's Reply Mem. in Supp. of Mot. ("Reply") (Dkt. No. 26).)

On November 13, 2024, the Court held Oral Argument on the Motion and reserved decision. (*See* Dkt. (Minute Entry for Nov. 13, 2024).) Following the argument, and at the Court's direction, Plaintiff filed a letter providing certain materials from the *Amado I* action. (Dkt. No. 28 (Joint Stipulated Request for an Order Granting Plaintiff Leave to File a Second Amended Complaint; Decl. of M. Persinger in Supp. of Stipulated Request; Order Granting Stipulated Request).)

## II. Discussion

### A. Legal Standard

A general rule among federal district courts is to avoid duplicative litigation. *Marotto v. Kellogg Co.*, No. 18-CV-3545, 2018 WL 10667923, at *2 (S.D.N.Y. Nov. 29, 2018). Accordingly, "[f]or the convenience of parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In assessing whether a transfer to another district is appropriate in the interest of justice under 28 U.S.C. § 1404(a), "[t]he threshold question . . . is whether the action could have been brought in the transferee forum." *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 695 (S.D.N.Y. 2009) (alteration and internal quotation marks omitted); *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 528 (S.D.N.Y. 2004) (same).

If—and only if—this element is established, courts then consider whether "the transfer must be in the interest of justice and convenience of the parties and witnesses." *In re CenturyLink, Inc. Sec. Litig.*, No. 13-CV-3839, 2014 WL 1089116, at *1 (S.D.N.Y. Mar. 18,

5

2014) (internal quotation marks and citation omitted). To conduct this inquiry, courts balance the following factors:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice.

*Ritchie Cap. Mgmt., L.L.C. v. U.S. Bank Nat. Ass'n*, No. 14-CV-8513, 2015 WL 1611391, at *4 (S.D.N.Y. Apr. 10, 2015); *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013); *MBCP Peerlogic LLC v. Critical Path, Inc.*, No. 02-CV-3310, 2002 WL 31729626, at *3 (S.D.N.Y. 2002). "There is no rigid formula for balancing these factors and no single one of them is determinative." *Larew v. Larew*, No. 11-CV-5771, 2012 WL 87616, at *3 (S.D.N.Y. Jan. 10, 2012) (quoting *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000)); *see also Steen v. Assurant, Inc.*, No. 22-CV-04571, 2023 WL 4406303, at *7 (S.D.N.Y. July 6, 2023) (same).

"As a general matter, a plaintiff's choice of forum should not be disturbed unless the balance of the factors tips heavily in favor of a transfer." *Reyes v. Div. of State Police*, No. 23-CV-2284, 2023 WL 8097163, at *2 (S.D.N.Y. Nov. 21, 2023) (quotation marks omitted); *see also Alpha Indus., Inc. v. Alpha Clothing Co. LLC*, No. 21-CV-87, 2021 WL 2688722, at *3 (S.D.N.Y. June 30, 2021) (same); *Casper Sleep, Inc. v. Nectar Brand LLC*, No. 18-CV-4459, 2019 WL 4727496, at *4 (S.D.N.Y. Sept. 27, 2019) (same); *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (same). Accordingly, "[t]he party moving for a § 1404 transfer bears the heavy burden of demonstrating that a plaintiff's choice of forum should be set aside." *Reyes*, 2023 WL 8097163, at 3 (citing *Knowles-Carter v. Feyonce, Inc.*, No. 16-CV-2532, 2017 WL 11567528, at *9 (S.D.N.Y. Sept. 23, 2017)); *see also*

*Children's Network, LLC v. PixFusion LLC*, 722 F. Supp. 2d 404, 409 (S.D.N.Y. 2010). Simply put, a plaintiff's choice of forum should not be disturbed unless a defendant has made "a clear and convincing showing" that the balance of convenience weighs heavily in favor of the defendant. *Atl. Recording*, 603 F. Supp. 2d at 695; *Casper Sleep, Inc.*, 2019 WL 4727496, at *4; *Linzer v. EMI Blackwood Music*, 904 F. Supp. 207, 216 (S.D.N.Y. 1995). In deciding whether the movant has met its burden, "a court may consider material outside of the pleadings." *Reyes*, 2023 WL 8097163, at *3 (quoting *Mohsen v. Morgan Stanley & Co., Inc.*, No. 11-CV-6751, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013)); *see also Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 176 (E.D.N.Y. 2003).

B. Analysis

The success of the Motion here turns on the threshold question—whether this Action could have been brought originally in the Northern District of California. Defendant argues that it could have for two reasons: (1) by making this Motion, Defendant consented to that district's personal jurisdiction over it and to it as a proper venue, (Reply 8); and (2) Plaintiff is judicially estopped from objecting to the appropriateness of that forum, (*id.* at 6–7).[3]

---

[3] Defendant acknowledges that it first raised these arguments in its Reply, rather than in its initial Memorandum of Law, because Plaintiff previously gave no indication that she would challenge the appropriateness of the Northern District of California as a forum. (*See* Reply 6–7 n.1; *see generally* Pl's Pre-Mot. Ltr.) Although "legal arguments raised for the first time . . . in a reply[] are generally deemed waived," *New York by James v. Red Rose Rescue*, 705 F. Supp. 3d 104, 122 n.17 (S.D.N.Y. 2023) (alteration adopted), "reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party," *Bravia Cap. Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 (S.D.N.Y. 2013) (citing *Bayway Ref. Co. v. Oxygenated Mktg. & Trading*, 215 F.3d 219, 226–27 (2d Cir. 2000)). Moreover, because Plaintiff had the opportunity at oral argument to respond to the new points Defendant raised in its Reply, the Court concludes it will not prejudice Plaintiff to consider those points here.

### 1. Defendant's Consent Does Not Render a Forum Appropriate

"For the purposes of section 1404(a), an action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 431 (S.D.N.Y. 2018) (citing *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F.Supp.2d 391, 401 (S.D.N.Y. 2004)).

It is undisputed that the transferee court would have subject matter jurisdiction over the Action. (*See* Pellegrino Compl. ¶ 4 (alleging this Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)); *Amado I* Compl. ¶ 4 (same).) However, the Parties dispute whether personal jurisdiction and venue is proper in the Northern District of California. Plaintiff argues it is not, as that district does not have general or specific personal jurisdiction over Defendant and "no part of the events or omissions giving rise to Ms. Pellegrino's claims took place in California." (Pl's Opp'n 19–20 (emphasis removed).) Defendant, for its part, does not seriously contend that the Northern District of California could exercise personal jurisdiction over it, or that venue is independently proper there. (*See* Reply 9–10.) Instead, it argues that both are appropriate in this instance because it *consents* to such jurisdiction and venue and, moreover, waives any defenses based on a lack of personal jurisdiction or improper venue, just as it did in *Amado I*. (*Id.* at 8.)

Defendant is correct that personal jurisdiction "is a waivable right, [and] there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (quotation marks omitted); *see Mallory v. Norfolk S. Railway Co.*, 600 U.S. 122, 138

(2023) ("Our precedents have recognized, too, that 'express or implied consent' can continue to ground personal jurisdiction—and consent may be manifested in various ways by word or deed."). Defendant is also correct that "[a] party that consents to personal jurisdiction in a particular forum also consents to venue there." *ErGo Media Cap., LLC v. Bluemner*, No. 15-CV-1377, 2015 WL 6442252, at *2 (S.D.N.Y. Oct. 23, 2015); *see also UrthTech LLC v. GOJO Indus., Inc.*, No. 22-CV-6727, 2023 WL 4640995, at *3 (S.D.N.Y. July 20, 2023) (same). However, it does not follow that a defendant's consent unilaterally renders a forum appropriate for § 1404(a) purposes.

To the contrary, in *Hoffman v. Blaski*, 363 U.S. 335 (1960), the Supreme Court considered this very question—whether § 1404(a) permitted transfer, on motion by the defendant, "to a district in which the plaintiff did not have a right to bring it." *Id.* at 336. The Supreme Court determined it did not, as § 1404(a)'s mandate that an action can only be transferred to "where it might have been brought" could not be "interpreted to mean, as petitioner's theory would require[], 'where it may now be rebrought, with defendants' consent.'" *Id.* at 342–43. In other words, the Supreme Court made clear that appropriateness of a transferee forum is evaluated at the point the lawsuit is *filed*, meaning a defendant's ex post consent is insufficient if the action could not have originally been brought in that forum. Accordingly, courts in this district have routinely held that "[§] 1404(a) does not permit transfer to a forum that acquires personal jurisdiction over the defendants *after* the filing of a lawsuit, either through consent or by the defendant's becoming a citizen of that forum." *See, e.g.*, *Steen*, 2023 WL 4406303, at *5 (citing *Hoffman*, 363 U.S. at 342–43) (emphasis added); *Starr Indem. & Liab. Co.,* 324 F. Supp. 3d at 432 (same); *Tlapanco v. Elges*, No. 15-CV-2852, 2017 WL 4329789, at *4 (S.D.N.Y. Sept. 14, 2017) ("The Supreme Court . . . has held that defendants may not

*unilaterally* render a district a proper venue for transfer by waiving any defense based on improper venue or lack of personal jurisdiction." (emphasis in original)); *ACE Am. Ins. Co. v. Bank of the Ozarks*, No. 11-CV-3146, 2012 WL 3240239, at *9 (S.D.N.Y. Aug. 3, 2012) (citing *Hoffman* for the proposition that the requirement that the transferee court have personal jurisdiction over the defendant "cannot be waived by the party seeking the transfer"); *Bayer Schera Pharma AG v. Sandoz, Inc.*, No. 08-CV-3710, 2009 WL 440381, at *4–5 (S.D.N.Y. Feb. 18, 2009) ("Courts in this Circuit routinely follow, as they must, the reasoning of *Hoffman*." (collecting cases)).

Although Defendant nods to this authority, it also points to allegedly contrary authority that "a defendant seeking transfer can consent to the jurisdiction of the transferee court, whether impliedly or otherwise." (*See* Reply 8–9, 9 n.2 (citing *Palmore v. Napoli Shkolnik PLLC*, No. 23-CV-1616, 2024 WL 1330003, at *11 (S.D.N.Y. Mar. 28, 2024) (finding a transferee forum appropriate in part because "[d]efendants themselves request the transfer, and therefore consent to the exercise of personal jurisdiction in the Eastern District" (internal citations omitted)); *Nuss v. Guardian Life Ins. Co. of Am.*, No. 20-CV-9189, 2021 WL 1791593, at *2 (S.D.N.Y. May 5, 2021) ("Defendant has impliedly consented to personal jurisdiction in Georgia by moving to transfer venue to the Northern District of Georgia."); *Evonik Corp. v. Amani*, No. 16-CV-8319, 2018 WL 3159823, at *1 (S.D.N.Y. Jan. 10, 2018) (finding a transferee forum appropriate in part where "defendants have consented to the transfer under § 1404(a), and agreed to waive any objection to personal jurisdiction and venue, as they are permitted to do"); *Bent v. Zounds Hearing Franchising, LLC*, No. 15-CV-6555, 2016 WL 153092, at *5 (S.D.N.Y. Jan. 12, 2016) (concluding that transferee district has "personal jurisdiction over [defendant] by virtue of [defendant's] express consent"); *accord Innovate1 v. First Bridge Merch. Sols., LLC*, No. 19-

10

CV-1123, 2020 WL 4718970, at *6 n.8 (D. Conn. Aug. 13, 2020) ("Defendants have also consented to personal jurisdiction in California by moving to transfer venue to the Central District of California.").) But these cases are not inconsistent with *Hoffman*'s binding rule, nor do they change the outcome. The courts in those cases did not rely on a defendant's consenting to transfer after a lawsuit was filed. Instead, they relied upon forum selection clauses, in which the parties consented to personal jurisdiction in the transferee forum *prior* to filing the lawsuit, *see Bent*, 2016 WL 153092, at *4–5 (noting defendant "express[ly] consent[ed]" to the transferee forum by virtue of the forum selection clause (citing *Burger King*, 471 U.S. at 472 n.14)), or upon the consent of both parties, *see Evonik Corp.*, 2018 WL 3159823, at *1 (noting that "a district court may transfer any civil action to any other district or division . . . to which all parties have consented" (quoting § 1404(a))), or upon factors separate from the defendant's consent, *Palmore*, 2024 WL 1330003, at *11 (finding a transferee forum was appropriate when a substantial portion of events giving rise to plaintiff's claims arose in transferee district); *Nuss*, 2021 WL 1791593, at *2 (concluding a transferee forum was appropriate when the breach giving rise to plaintiff's claims occurred in the transferee district); *Innovate1*, 2020 WL 4718970, at *6 (noting the parties did not dispute that the case could have been brought in the transferee district).[4]

---

[4] Defendant cites one outlier from this district, *Marotto*, in which the court determined, without more, that "[t]he [transferee] court has personal jurisdiction over [d]efendants by their implied consent in making this motion [to transfer]." 2018 WL 10667923, at *5. However, to support this conclusion, the *Marotto* court cited *Bent* and *Burger King*, both of which allowed transfer due to the existence of forum selection clauses. Moreover, the *Marotto* court does not grapple with, much less acknowledge, *Hoffman*. Accordingly, its persuasive force is diminished.

In sum, per *Hoffman*, Defendant's post hoc consent alone is insufficient to render the Northern District of California an appropriate forum to transfer this Action.[5]

2. Judicial Estoppel

Defendant argues that, regardless, Plaintiff is judicially estopped from claiming that personal jurisdiction and venue are improper in the Northern District of California because that position is directly contrary to the position Plaintiff successfully took in *Amado I*. (Reply 6–7.)

"It is well-settled under principles of judicial estoppel that 'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, [she] may not thereafter, simply because [her] interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by [her].'" *Nationstar Mortg. LLC v. Hunte*, No. 16-CV-8708, 2022 WL 17177860, at *3 (S.D.N.Y. Nov. 23, 2022) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)); *Manley v. Grossman*, No. 13-CV-1974, 2017 WL 4326541, at *7 (S.D.N.Y. Sept. 27, 2017) ("[J]udicial estoppel 'prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding.'" (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004))); *Pugliese v. Verizon New York, Inc.*, No.

---

[5] Defendant argues in passing that there is "good reason to doubt the vitality" of *Hoffman* and the cases applying it, as *Hoffman* "long predates" the Supreme Court's decisions in *Burger King* and *Mallory*. (Reply 10 n.3.) The Court disagrees. In *Burger King*, the Supreme Court noted that parties can "stipulate *in advance* to submit their controversies within a particular jurisdiction" and that "[w]here such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process." 471 U.S. at 472 n.14 (internal citations and quotation marks omitted) (emphasis added). In *Mallory*, the Supreme Court held that a state law requiring an out-of-state corporation to consent to personal jurisdiction in order to do business there does not violate the Due Process Clause of the Fourteenth Amendment. 600 U.S. at 128. Both decisions involve parties consenting to suit in a particular forum before a lawsuit was initiated—not one party unilaterally attempting to consent *after* a suit was filed. Thus, neither decision calls *Hoffman*'s rule into question.

05-CV-4005, 2008 WL 2882092, at *12 n.13 (S.D.N.Y. July 9, 2008) (same). "A party invoking judicial estoppel must show that (1) another party advanced an inconsistent position in another proceeding and (2) the first tribunal adopted that position in some manner." *Hunte v. Rushmore Loan Mgmt. Servs., LLC*, No. 22-CV-2169, 2024 WL 1076683, at *6 (S.D.N.Y. Mar. 11, 2024) (quoting *Cody v. Charter Commc'ns, LLC*, No. 17-CV-7118, 2020 WL 3639935, at *7 (S.D.N.Y. July 6, 2020)); *see also Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 155 n.7 (2d Cir. 2007) (same).

Defendant has no difficulty establishing the first element of judicial estoppel, as Plaintiff's position here is clearly inconsistent with her position in *Amado I*. There, she joined a second amended complaint (asserting many of the same claims here) expressly alleging that venue the Northern District of California had "personal jurisdiction over [Defendant]" and that venue was proper there. (*Amado I* Compl. ¶¶ 5–6.) Here, Plaintiff argues the exact opposite. (*See* Pl's Opp'n 17 ("[T]he Northern District of California does not have general [or specific] personal jurisdiction over [Defendant.]"); *id.* at 19 ("[V]enue in the Northern District would be improper.").)[6] Defendant, however, falters on the second element—whether the *Amado I* court actually adopted Plaintiff's inconsistent position.

The Second Circuit has held that "estoppel only applies when a tribunal in a prior proceeding has accepted the claim at issue by rendering a favorable decision." *Simon v. Safelite*

---

[6] Plaintiff attempts to suggest that, in *Amado I*, she did *not* allege that Defendant was subject to personal jurisdiction and that venue was proper in the Northern District of California, as those allegations "were pleaded by *Ms. Amado* in her initial Complaint and carried through to the SAC [and] *Ms. Pellegrino's* claims were only added to the lawsuit later, *by the parties' stipulation*." (Pl's Opp'n 18 (emphasis in original).) But this ignores that those very same allegations were also made in the second amended complaint in that action, which was pled by *both* Ms. Amado and Ms. Pellegrino. The Court thus has no trouble concluding that Plaintiff's position here is directly contrary to the one she asserted in *Amado I*.

13

*Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997). By requiring "acceptance" by an earlier tribunal, the doctrine is thereby limited only to "situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Id.* at 72; *see also Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005) (same); *Au New Haven, LLC v. YKK Corp.*, No. 15-CV-3411, 2022 WL 10122844, at *4 (S.D.N.Y. Oct. 17, 2022) (same). A case from the District of Massachusetts is illustrative. In *Lelchook v. Islamic Republic of Iran*, 199 F. Supp. 3d 314 (D. Mass. 2016), the defendant sought to transfer the case under § 1404(a) to the District of Columbia, which both parties agreed lacked personal jurisdiction over the defendant. *Id.* at 315. The defendant, however, argued that the plaintiffs were judicially estopped from challenging personal jurisdiction in the District of Columbia, as they had previously filed the same suit there. *Id.* at 316–17. Although the court acknowledged that the plaintiffs' positions were directly inconsistent, it rejected the defendant's argument, noting "there [wa]s no indication that the D.C. district court adopted the plaintiffs' position that it had personal jurisdiction over [the defendant]," as the D.C. court dismissed the defendant "without mentioning personal jurisdiction and before [the defendant was served.]" *Id.* at 319. Thus, because "[t]he issue of personal jurisdiction there had not been briefed[,] [n]or was it adjudicated," the *Lelchook* court declined to apply judicial estoppel. *Id.*

As in *Lelchook*, Defendant has not established that Plaintiff's contrary position was actually accepted by Judge Chesney in the California Action. Defendant asserts that the *Amado I* court "accepted" that position when it "permitted the filing of [Plaintiff's] amended complaint asserting claims against [Defendant] and proceeded to adjudicate [Defendant's] motion to dismiss her complaint." (Reply 7 (internal citation omitted).) But there is nothing in the briefing on the motion to dismiss addressing personal jurisdiction or venue, (*see Amado I* Dkt. Nos. 25,

14

27, 29), nor in the court's decision granting said motion, *see generally Amado*, 2023 WL 3898984 (exclusively addressing Defendant's arguments regarding preemption and failure to plead any false or misleading statements). There is nothing to suggest that the *Amado I* court accepted—or even considered—Plaintiff's now-contrary position, and thus, no risk of obtaining an inconsistent decision in this Court. *See Wight v. BankAmerica Corp.,* 219 F.3d 79, 90–91 (2d Cir. 2000) (denying judicial estoppel where the prior court "did not address in any way" the issue that was allegedly estopped); *see also Antares Reinsurance Co. Ltd. v. Nat'l Transp. Assocs., Inc.*, No. 23-CV-113, 2023 WL 5836803, at *3 (N.D. Cal. Sept. 7, 2023) (declining to apply judicial estoppel because "no [c]ourt ruled on th[ose] allegations . . . [and] there [wa]s no risk that 'judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.'" (quoting *New Hampshire*, 532 U.S. at 750)); *In re AXA Equitable Life Ins. Co. COI Litig.,* 595 F. Supp. 3d 196, 249 (S.D.N.Y. 2022) (holding a party's "reversal of position . . . , in in the absence of a judicial decision adopting its prior position, 'introduces *no* risk of inconsistent court determinations'—much less a certain risk, as required in the Second Circuit—'and thus poses little threat to judicial integrity.'" (emphasis in original) (quoting *New Hampshire*, 532 U.S. at 751)).[7]

---

[7] Defendant also points to the joint stipulation that the *Amado I* parties entered allowing Plaintiff to join that action, arguing that because the *Amado I* court entered that stipulation, it functionally accepted Plaintiff's position regarding personal jurisdiction and venue. (*See* Dkt. No. 28 at 10–11.) But even were that level of ministerial approval sufficient to signify acceptance—and it is not clear that it would be—it does not move the needle for Defendant. The stipulation does not establish that Defendant is subject to personal jurisdiction or venue in that Action; to the contrary, it expressly reserves all of Defendant's rights to assert any defenses to which they would be entitled—including venue and personal jurisdiction. (*See id.* at 4 ("[Defendant] . . . expressly reserves all rights and defenses to any amended pleading, including those under Federal Rule of Civil Procedure 12(b).").) Thus, even if the *Amado* court conceivably "accepted" the position laid out in the stipulation, that position is not contrary to the one asserted by Plaintiff here.

Accordingly, as Defendant cannot establish that Plaintiff's contrary position was adopted by the *Amado I* court, the Court here declines to apply the doctrine of judicial estoppel.

* * *

In sum, because Defendant has not demonstrated that the Northern District of California is an appropriate forum absent its consent, and as Plaintiff is not judicially estopped from objecting to said forum, Defendant has failed to establish the threshold element necessary to succeed on a motion to transfer. Although the Court is mindful of Defendant's concerns about forum shopping, (*see* Def's Mem. 15–17)—and recognizes that those concerns are not entirely unwarranted—the Court must deny the Motion without analyzing whether the remaining factors favor transfer, *see Reyes*, 2023 WL 8097163, at *3 (analyzing transfer factors only once the "preliminary inquiry" of the propriety of the transferee forum is established); *Casper Sleep, Inc.*, 2019 WL 4727496, at *4 (same); *AEC One Stop Grp., Inc.*, 326 F. Supp. 2d at 528 (same).

### 3.  Motion to Stay

Because the Court declines to transfer this Action, it must consider Defendant's request to stay it instead while the parties in *Amado II* brief a motion to dismiss that complaint. (*See* Def's Mem. 23–24.)

A district court has inherent power to stay proceedings. *See Rojas v. Teva Pharms. USA, Inc.*, No. 20-CV-6448, 2020 WL 8513143, at *1 (S.D.N.Y. Dec. 1, 2020) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In deciding whether to grant a motion to stay proceedings, courts consider the following factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interest of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996); *see also Poppel v. Rockefeller Univ. Hosp.*, No. 19-CV-1403, 2019 WL 3334476, at *2 (S.D.N.Y. July 25, 2019) (same); *Landri v. Smith*, No. 14-CV-9233, 2016 WL 828139, at *3 (S.D.N.Y. Feb. 29, 2016) (same); *Ritchie Cap. Mgmt., LLC v. Gen. Elec. Cap. Corp.*, 87 F. Supp. 3d 463, 471 (S.D.N.Y. 2015). The balance of these factors is performed on a case-by-case basis, and the "basic goal is to avoid prejudice." *See Poppel*, 2019 WL 3334476, at *3 (citing *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005)).

The Court concludes that a stay is not warranted here. Defendant has not articulated any compelling reason why it would be burdened if this Action proceeded, apart from its "interest[] in avoiding the expense and burden of briefing overlapping motions to dismiss at the same time that could result in inconsistent decisions." (Def's Mem. 24.) But this reason rings hollow, as the Parties, in any event, cannot avoid briefing both motions and cannot predict exactly when such briefing will be due in either court. Further, to the extent that Defendant claims a stay would be more efficient for the Parties, the two cases are now at the same stage of litigation. As Plaintiff points out, delaying one now while proceeding with the other will only complicate any efforts to coordinate discovery should both complaints survive a motion to dismiss. (*See* Pl's Opp'n 35.)[8] Similarly, judicial interests are not advanced by a stay here as both courts will have to consider the respective motions to dismiss the complaint before them, regardless of the other's

---

[8] Defendant cites this Court's decision in *Rojas* for the proposition that a stay would allow the Parties "to avoid the risk of duplicating their briefing on Defendant[']s motion to dismiss" and would "reduce the risk of inconsistent rulings." *Rojas*, 2020 WL 8513143, at *1. But in *Rojas*, the Court granted a brief stay because the parties were awaiting a decision by the Judicial Panel on Multidistrict Litigation ("JPML") on whether it would consolidate multiple cases, including the one before the Court. *Id.* Granting a stay ensured the parties did not have to brief issues that would then potentially be re-briefed before an MDL court and decreased the chance of conflicting decisions between this Court and an MDL court later adjudicating the same case. As noted above, no such concerns are present here.

17

outcome, and there is no real risk from potentially inconsistent decisions, as neither this Court's decisions nor Judge Chesney's are binding on the other.  Moreover, while the lead-related misrepresentation claims asserted in *Amado II* and in the Complaint are substantively identical, (*compare* Pellegrino Compl. ¶¶ 41–69, *with Amado II* Complaint ¶¶ 42–69), they still are based on different state laws, and this Court must also address sugar-related misrepresentation claims that are no longer before Judge Chesney and are governed by different circuit precedent.  There is thus no reason to assume that one court would necessarily benefit from the other's reasoning, as Defendant suggests.  (*See* Def's Mem. 23.)

  Moreover, while Defendant claims that a stay here would be "brief," as it would last only "until Judge Chesney decides P&G's motion to dismiss Ms. Amado's complaint," (Reply 14), the Court is not persuaded.  Although Defendant asserts that "the median time for Judge Chesney to decide a motion to dismiss is just 52 days," (Def's Mem. 23–24),[9] that estimate is necessarily underinclusive, as *Amado II* is also stayed and no motion to dismiss has yet been filed in that case.  Thus, Defendant has no way of predicting exactly how brief—or attenuated—any stay would be in this Action.  *See Rojas*, 2020 WL 8513143, at *1 (granting a stay that was "likely [to] be short," as a JPML hearing was scheduled for two days after the staying court's decision); *Ritchie Cap. Mgmt., LLC*, 87 F. Supp. 3d at 471 (granting a "short stay" where a JPML hearing was scheduled two weeks after the staying court's decision, as "such short delays . . . usually do not prejudice the plaintiff" (internal quotation marks omitted)).  The Court will not risk prejudicing Plaintiff—and indefinitely clogging its own docket—absent a compelling, non-speculative reason for doing so.

---

[9] A tip of the cap to Judge Chesney for that impressive statistic.

18

III.  Conclusion

For the reasons stated above, the Court denies Defendant's Motion to Transfer.  Further, the Court denies Defendant's request that the Action be stayed pending resolution of Defendant's putative motion to dismiss in the Northern District of California.  The Court will hold a telephonic status conference in this case on February 6, 2025, at 3:30 PM ET.

The Clerk of Court is respectfully requested to terminate the pending Motion.  (Dkt. No. 20.)

SO ORDERED.

DATED:   January 17, 2025
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE